## EMPIRE STATE BANK v. ENGEBRET M. HOFF.[1]

January 4, 1935.

No. 30,095.

*Hall & Catlin, Sterling & Purcell,* and *Paul D. Stratton,* for appellant.

*Fosnes & Rolloff,* for respondent.

[1]Reported in 258 N. W. 145.

HILTON, JUSTICE.

This is an appeal from an order denying plaintiff's motion for a new trial. The case was tried to the court without a jury. The assignments of error here for review challenge the correctness of the court's findings of fact and conclusions of law.

On September 23, 1931, the Farmers State Bank of Hanley Falls was closed and taken over for liquidation by the commissioner of banks and placed in charge of a special deputy examiner. The bank was reorganized on August 1, 1932, under a plan approved by the commissioner of banks and according to law. The terms and conditions thereof were contained in a "depositors' reduction agreement," which among other things provided:

"It is further agreed and understood that all of the notes and other assets of the bank which are not used in the opening of the bank are to be segregated and placed in the hands of one or more persons in trust for the use and benefit of those who were creditors of the bank at the reopening thereof. Such trustees shall be appointed by a judge of the district court of Yellow Medicine County upon application by a majority of the depositors' committee of said bank; and such appointment shall be made after such notice to the depositors, creditors and stockholders of said bank as said judge shall require. Provided, however, that during the period of one year after the date of the reopening of said bank any note or asset remaining in the bank at the time it is reopened which, in the opinion of the officers thereof shall be uncollectible in whole or in part shall be delivered by said bank to the trustees so appointed and the amount owing thereon at that time paid to the bank by the trustees out of any moneys theretofore collected by them out of such trust assets. Or, said bank may at its option exchange such uncollectible notes or assets for any other notes or assets of like face value then among the trust assets. In either of these cases said uncollectible notes or assets shall thereafter be considered as a part of such trust assets and handled as such."

The segregation referred to in the agreement was made and the bank reopened under the same name. Defendant was appointed

by the district court as trustee and took charge of the property not taken by the reorganized bank. His powers and duties were defined in the order of the court. The special deputy examiner was chosen as cashier of the reorganized bank. The bank continued its business at Hanley Falls until February, 1933, when it was moved to another county and located at Cottonwood, with the approval of the commissioner of banks. At that time its name was changed to Empire State Bank.

When the bank was closed it owned a lot and building in Hanley Falls which was especially constructed for banking purposes and had been occupied by it for a number of years. This property was carried on its books at a valuation of $4,000. The reorganized bank took over this property and occupied it until the removal of the bank to Cottonwood. The testimony showed that the value of the building property after being vacated was only $2,000.

During the year beginning August 1, 1932, exchanges of assets were made in compliance with the agreement. Shortly before the expiration of the year plaintiff by resolution determined that certain of the assets taken over by it when the distribution was made between it and the trustee were valueless and uncollectible and tendered them to the trustee, and at the same time demanded of him certain named assets in his hands. Among the assets so presented for exchange was the vacated bank building at Hanley Falls, with a valuation placed thereon of $4,000. The trustee refused to make the exchange, and this action followed to require him to do so.

The question here involved and determined by the trial court adversely to the claim of plaintiff is whether under the depositors' agreement the bank building property in Hanley Falls (a capital asset) came within the designation of "notes or other assets" as used, described, and referred to therein. We agree with the views of the trial court expressed in its memorandum. In the proviso hereinbefore quoted, following the words "any note or asset remaining in the bank at the time it is reopened," are found these significant words explanatory of what notes and assets were to be exchangeable: *"uncollectible," "delivered," "amount owing thereon," "of like face value."*

It is our opinion that the words "notes or assets" have reference to notes, bonds, state or municipal warrants, drafts, mortgages, and other usual bank paper evidencing choses in action. Manifestly, the words "uncollectible," "amount owing thereon," "of like face value" cannot by any stretch of the imagination be held applicable to the bank building property. Further, if that property was intended to be included as an exchangeable asset, the usual words of conveyance would have been used rather than the sole word "delivered." The word "assets" as ordinarily used has a wide significance, but its general meaning is not applicable here. Because notes generally constitute the largest item of the property of a bank that word was used. The qualifying words appearing in the agreement are as significant of the intention of the parties as would have been the words "notes or other like assets." We hold that the bank building property was not within the contemplation of the parties to the depositors' agreement and was not eligible for exchange for assets in the hands of the trustee.

Affirmed.

STONE, JUSTICE (dissenting).

I cannot concur because it seems to me that too narrow a construction is being put upon the contract. Considered by itself as a mere writing, there is perhaps ambiguity, but to my mind the meaning becomes clear when the writing is considered as a contract in reference to its subject matter. The latter was a closed country bank about to be reorganized. The subject of the contract included not alone the bills receivable but all the "assets" of the institution. There is no word in the document which expressly or by necessary implication excludes any asset. True, as Mr. Justice Hilton suggests: "Notes generally constitute the largest item of the property of a bank." But in the recent banking debacle real estate and notes secured by real estate constituted by far the most troublesome items. The item of "other real estate" has been very frequently the rock upon which our banks have broken. To say that a reorganization contract such as the one determinative of this case did not cover real estate is simply to ignore its dominant purpose. Nothing runs more directly counter to the ordinary and necessary rules of interpretation.

It is for that reason that I cannot concur in this decision. I do not think that the frequent reference to intangibles and the use of such words as "uncollectible" can properly be given the "qualifying" effect attached to them by the opinion of the majority. That makes them words of nullification rather than mere qualification, and the thing nullified is one of the main and very obvious purposes of the contract.

JULIUS J. OLSON, JUSTICE (dissenting).

I am in full accord with the views expressed by Mr. Justice Stone.